Good morning, may it please the court. My name is Martin Vogelbaum. On behalf of the Federal Defenders of the Western District of New York, I represent Mr. Woods in this case. This case does raise some very significant issues of statutory construction, mainly whether a district court may extend the initial evaluative period under 18 U.S.C. 4241 D.1, thus permitting the certification of the defendant as dangerous despite the lapse of the four-month period in the statute, and secondarily, whether a district court may, in the absence of a properly entered certification, dangerousness certification, order a dangerousness evaluation under section 4247 B, not just in advance of a dangerousness hearing, but in advance of certification itself. However, I do recognize that there is a threshold issue here that the government has raised about mootness, and so I was going to turn to that first. It is our position that this case is not moot for three reasons, basically. First, it's simply not true that this court cannot grant any effectual relief to Mr. Woods. First of all, it is our belief that the court obviously can vacate Judge Villardo's order affirming the magistrate's ruling committing my client under 4247 B, even after the lapse of the 4241 D.1 evaluation period. Secondly, as the court now knows from the government's 20HA letter . . . I'm sorry, and the vacateur would provide relief to your client how? Well, it would constitute . . . well, this ties into the next point I was going to make. As the government has now pointed out, Judge Talwani in the District of Massachusetts has held that she is without authority to take any action on the time periods that are at issue in this case pending a ruling from this court, and presumably that is because she wants to await this court waiting . . . No, but I mean, part of the thing that I think is complicated is that you've asked for the exact same relief under the same legal theories of two different courts, and so maybe she is of the view that we might be, which is we can handle the stuff that is supposed to be appealed to us, and she can only handle the stuff that is supposed to be appealed to the First Circuit. So, if you could explain how the idea of being able to ask two different courts for the same relief under the same legal theories means the government is evading review. It seems like we now have two different courts that are trying to look at the same issue, which is the exact opposite, in my view, of evading review. If I could have just a moment to think about that question. I think that what arises here because of the way this case played out procedurally in our district court, what Mr. Woods cannot get from Judge Talwani, presumably he could get dismissal of the certificate, I suppose, and he could get relief if she finds that ultimately it is . . . that he was improperly certified or improperly held, but what Mr. Woods cannot get and which moves to our capable of reputation but evading review theory is a ruling from this court on what the law of the Second Circuit is. Mr. Woods has lived in the Second Circuit for his entire life. Several courts have held, as it's pointed out in our brief . . . But, of course, we don't act on cases that aren't live controversies, and if he's in a different district now and the time for interlocutory appeals and so on has passed, he's under a different regime at the moment. There are civil commitment proceedings going on. We may not be able to. It may not be a live controversy here, regardless of how nice it would be to clarify and update, I guess, Magasuba, which speaks to these issues. But if we don't have a live case, we're not empowered to just state what the law is. I don't think . . . but that's moving to, I think, the second theory of why this case . . . Well, I suppose it's not a theory of why this case is not moot, but an alternative to why this case is not moot is that it is inherently capable of repetition yet evading review. Several courts have held, they're all cited in our brief, that 4247B orders and 4241D1 orders are inherently so short in duration that they will almost inevitably escape direct appellate review. But they sometimes come up in the context of 3142 orders as well and in different sequences, the factual setting for each of those circumstances and when a dangerousness finding is made can vary quite a lot. So I would hesitate to just proceed forward on guessing what precise question would be presented that would otherwise escape review. How would you phrase the question, the precise question we should answer that otherwise would evade review if we didn't face it now? Whether the district court was correct to affirm the magistrate's ruling that the magistrate had the authority to commit an order of dangerousness evaluation of my client in the absence of a 4246A certification antecedently and properly entered. I guess that's how I would phrase it. Okay, so I just want to make sure. You're asking for an invalidation of the warden's certificate. So what would you have us do? Direct the District of Massachusetts to dismiss the civil commitment action? I mean, can we do that? Well, I don't think I'm asking necessarily. I'm asking for vacating of the district court's order which theoretically could result in Mr. which should result in Mr. Woods' release. I don't know that that necessarily, I don't know that that's necessarily asking for the same thing as dismissing the civil commitment proceeding. He's not being held according to judicial process at this point. He's being held by what amounts to an executive finding of probable cause. And certainly in any other situation where a defendant is held, you know, by executive authorities as opposed to judicial order from a different district, this court wouldn't have necessarily a hesitation about directing the executive authority to release him. In that sense, it's very much like a bail situation. I mean, somebody from our district can be confined in the Sixth Circuit in Ohio. And on a bail appeal, this court would have no hesitation about ordering his release merely because he was in a different district. Did you seek an interlocutory appeal at an earlier stage, the moment when the detention became prolonged without the certificate having been filed? So, no. So what happened, the way it played out was the 4241D1 commitment expired on May 16th of 2024. At that point, the director of Devins had asked for an extension of that period, which I objected to on the basis of MAGA-SUPA. And rather than ruling on that objection, the magistrate immediately, the magistrate ordered briefing, briefing on the issue, and specifically ordered briefing on whether he could seek a further, the government could seek a further commitment under 4247B. So we had to argue it out in front of the magistrate. I then asked the magistrate for a stay of his order, saying that he could do the commitment, and appealed to the district court and also asked for a stay there, which was denied on September 2nd, 2024, if I'm not mistaken. I will concede that the certificate was executed on August 30th of 2024. So even before the district court ruled, affirming the magistrate. But I will concede that it ultimately was not filed until September 25th. But at no point did you seek an interlocutory appeal claiming that, or arguing that his detention had become illegal? Well, I don't think until the district court, I don't think until that issue was played out in front of the magistrate and all that briefing was done. I mean, obviously this court doesn't have jurisdiction to take an appeal from the magistrate. So it was my feeling and thought that I had to play out the process from the magistrate to the district court before I could have access to this court. So except you're saying that detention had become illegal by that point because the four months had expired and there was no certificate of dangerousness? That is correct. Right. Right. And if you could explain one other thing, if you want to give me the time. I'm a little confused. This is a complicated statutory scheme. And I understand you to be saying that there has to be a certificate of dangerousness issued before there can be a dangerousness hearing. That is correct. But I don't understand why that makes sense as a statutory reading. You have to have some basis for issuing a certificate of dangerousness, don't you? And why wouldn't that be based on some review of the records or accumulation of material and potentially even hearing? I mean, there are several different evaluation periods provided for. So why does that make sense as a way of reading the statute? Well, I think, first of all, looking at 4246, simply the text of it, 4246A is headed institution of proceeding and says that the inaugural step, as have several courts that are cited in my brief, to the subsequent civil commitment proceedings, is in fact the filing of the dangerousness certificate. And then it explicitly says that upon the filing of the dangerousness certificate, the court in, and here we can tell simply by the structure of the statute, the court in the district of confinement shall, must hold a dangerousness hearing. So the sequence is provided for in the statute. But it's perplexing, don't you agree? I mean, it's potential dangerousness, I guess. I mean, and the government had moved for a 3142 order saying that there is a presumption in favor of detention based on the nature of your client's activity. But I guess that had not been ruled on. That had not been ruled on. Yeah, to this day that remains extant. Okay, thank you. Can I ask about what the effect of the dismissal of the criminal prosecution does to your client's argument? I mean, my understanding is that the 4241 proceeding is attached to the prosecution. And while I do hear your Magasuba argument, Magasuba also considered the idea of harmlessness. I'm sorry, I missed the last one. Magasuba considers the possibility of harmless error. So can you talk to me about how the relation of the dismissal of the criminal prosecution relates to where we are and the understanding of harmlessness there? Well, I hate to wade back into mootness, but this does go, I think, to our capable of repetition yet evading review argument. Leaving aside the evading review part of it, I mean, there is, it seems to me, a more than speculative and a quite realistic possibility that Mr. Woods is going to find himself in the same position here. And the court will note that the complaint here was dismissed without prejudice. The statute of limitations has not run on it. So there is, to begin with, the possibility of re-prosecution on this complaint. And that is supported, I think, by the sealed documents and the psychological reports that the court has, all of which tend to show that what happens with Mr. Woods is that he, whether he's on the street or whether he is incarcerated, if he is medicated, he regains a certain level of functionality, perhaps not to the level of legal competence, but enough that he can be at large. I mean, it's obvious that he's been at large over the years, as well as incarcerated. And so I don't think the dismissal of the complaint shields him from further prosecution. As a matter of fact, I think that if there's any case in which it's likely that somebody is going to be re-prosecuted under the same sort of like factual scenario, it's this one. But at this point, what is the status of the civil commitment proceedings ongoing in Massachusetts to keep him off the street? They're stalled. They're stalled? They're stalled, awaiting this court's ruling. And then it's my understanding that Judge Talwani, there was an additional period of delay in September that Judge Talwani, that doesn't concern the dates that are at issue here that Judge Talwani is concerned about, but I think it will roll out later once the opinion from this court comes out. So, Mr. Vogelbaum, I've got two questions. I understood your main merits-related argument to be exactly what you said, which is that you need a certificate in order to have – that's a triggering event for a hearing. That's right. Yes. That's the central core merits-related document. And you rely on this language in 4246A, if the government files a certificate of dangerousness, the court shall order a hearing. Correct.  That's right. What it doesn't say is that the court may not order a hearing without a certificate of dangerousness. It says if the government orders a hearing, it shall. But it doesn't seem to cabin the court's ability – and this is what I think your argument is premised on – it doesn't seem to cabin the court's ability to conduct a hearing in the absence of a certificate. Can you help me with that? Well, I think what you – I think what you – I mean, to repeat an old saw, of course, federal courts are primarily creatures of statute, and here you have a statutory command, and I think that the statutory scheme is well thought out in the sense that if any court could sui sponte, convene a dangerousness hearing in any district, for example, even one like ours that doesn't have a federal medical center, then you would have even a much more heightened version of the issue that we have in this case, which is you would have courts ruling potentially inconsistently all around the country and just sort of doing their own things. And I do think that the mandatory language here shall hold a hearing after – explicitly after the filing. Is there a specific case on this point? There is not that I'm aware of. Okay. Actually, there is. I apologize. Baker from the Sixth Circuit. It is cited repeatedly in our briefs and holds explicitly that a district court lacks the authority to convene a dangerousness hearing in the absence of a properly filed certificate. Okay, so that's the case. Yes. If I may. Of course. One of the things that we have to do when we're trying to interpret statutes and potential gaps and potential ambiguity is to avoid an absurd result, and one of the appeals of the reading that Judge Loyer offered is that it addresses the arguably absurd reading that Judge Carney was trying to avoid, which is people are expected to issue certificates of dangerousness on what? Like on what basis? And I'm asking for you to help me with perhaps understanding why it is not absurd to be expecting certificates of dangerousness to be issued without some basis or some help. I'm not actually sure that that would be in the interest of the clients that your organization serves. So if you could help me square this competing statutory. I understand the court's question and concern. I don't think it's absurd. As a matter of fact, you know, I would point out that there is nothing in this statute, as a matter of fact, the statute uses the word may, about the preparation of a dangerousness assessment. I mean, the district court is by no means in this sort of, you know, here Judge Loyer, you know, here is an example of the statute actually saying, no, you don't have to do, you don't have to do something. You don't have to order, the district court doesn't have to order a dangerousness assessment. Similarly, there's nothing in the statute that says the district court even has to get a competency report. I will concede that it is the usual practice that these things are done. But in terms of making the dangerousness assessment, as far as I know, the federal system is the, it's the only system I'm aware of where some kind of temporary hold, the hold here in 4246A. It would be the only system I was, I am aware of that would require a report before that to happen. I mean, it happens all the time that people are held for psychiatric reasons because they pose a danger to themselves or others on the basis, for example, of a single psychiatrist, say so, perhaps for 72 hours, or then by a board, you know, which is what happened here for a longer period of time. I'm sorry, let me just ask the question very pointedly. Yes, sure. The federal defenders would not have an issue with certificates of dangerousness being issued without any sort of discernible process that a judge was involved in. No, it's my understanding, that's correct. It's my understanding from the districts that deal with this routinely, like the Eastern District of North Carolina, for example, or the District of Massachusetts, that that is the normal process and it's regarded as sort of akin to a civil complaint or notice pleading with, you know, some meat on the bones underneath it, substantiating the allegations. And I think that one of the reasons that Section 4247B, for example, provides for an additional, you know, commitment is to have some further, you know, judicial intervention following that initial executive action. And also because there are a couple of other reasons why it might exist, because the subjection to a mental evaluation, although it can't really be compelled, but it's still like, it's still a more invasive form of custody than simply sitting in the hospital. And secondly, because as we know from Dr. Belton's affidavit in this case, not every facility is capable of performing every evaluation. So 4247B might also fit in there because the person may be housed at something that isn't a co-executable facility for the dangerousness assessment, using the words of the statute. But yes, to answer your question directly, it's my understanding that that is how it's routinely done and we would not have an objection to that. So in answer to my question, one of the things to which he resorted was a lack of uniformity if it was left up to courts to determine dangerousness in the absence of a certificate. Wouldn't you have the same problem given you had, with respect to, you know, different executive branch units making a dangerousness assessment? Except, well, I don't think the statute allows for that. So basically, it's a statutory, it's not a policy related issue, it's a statutory. It's the director of the facility, that's correct. Let me also ask you about the District of Massachusetts waiting for us for a decision. The decision could be that this matter is moot and then that would allow it to proceed, correct? That's true. Okay. That's true. All right. Well, we've taken you well past your time. You have reserved some time for rebuttal. We'll hear from the government. Mr. Eldridge. May it please the court. Good morning. Sean Eldridge for the United States. This case should be dismissed as moot. But if your honors disagree in any event on the merits, the district court's decision was correct. In the order, continuing Mr. Woods' commitment for a dangerous assessment should be affirmed. On the mootness point, Mr. Woods is not confined currently due to any process from the Western District of New York. He is solely confined due to the 4246 certification that we've been discussing. And that is all pending in the District of Massachusetts where, respectfully, I think there was some discussion about that matter being stalled. That is incorrect. There's actually a final, what I'll call a merits hearing. There's an evidentiary hearing scheduled in July. For civil commitment. That's right, Judge. Under what law? Under section 4246. Okay. So, right. The 4246 certification kicks off those proceedings in Massachusetts. That's what happened in September. Mr. Woods filed his motion to dismiss based on essentially the same arguments that are posed here, I think in March or April or thereabouts. Judge Talwani issued her decision a few weeks ago essentially saying, I'm not going to wade into the Second Circuit's part. If they affirm, then there's nothing more for me to do. And if the Second Circuit reverses, then if you choose to, you can come back to me and ask me to think about it again. But that leads to what's called civil commitment. Yes, Your Honor. It has nothing to do with Massachusetts law. It's all pursuant to the sections we've been discussing here. Absolutely correct. It's in Massachusetts just because the statute 4246 says you have to bring it where the individual is being confined. That's right. In addition to him not being confined due to any process in this district, as some of the questions pointed out, the underlying case has also been dismissed. And in terms of process on that, if Mr. Woods doesn't like the result out of Judge Talwani's court, he is free to appeal to the First Circuit. And in the interim, going all the way back to the day the certificate has filed, the statutes here give him a remedy, which is section 4247G that says that habeas corpus is unimpaired and that nothing contained in section 4246, which is the statute that says if that certificate is filed, your release is stayed until the civil commitment proceedings are completed in Massachusetts. 4247G says that nothing contained in 4246 precludes a person who is committed under that section from establishing by a writ of habeas corpus the illegality of his detention. So that's another way that if Mr. Woods wanted to challenge the illegality of his detention in the correct form, that he could do that. So may I ask, do we need to decide as a question of first impression in this circuit where the defendant needs to go for relief? I mean, because we asked your colleague, were there any cases he thought about it, gave us one. Is this is this a new question or do you think we have enough law to tell us where to go? Judge, I think I'm not aware. Let me, if I can give two answers to you, Judge Pettis. The body of case law from your sister circuits, primarily the fourth, because they handled the bulk of these cases, because the Butner Hospital is located within that district. I think spell out pretty clearly kind of the break between which court handles what. And what the cases essentially say is kind of the last commitment order. What puts you in front of, in our case here, the Massachusetts court, the commitment proceeded period right before that. So how did you get into that custody should be dealt with by the district court who is hearing the 42-46 petition. And if you want to challenge something that happened way earlier in the case. So, for example, if, you know, in this case, there was this is not before this court, but there was prior litigation in this case about the amount of time it took to get Mr. Woods hospitalized in the first place. Right. And there was a bunch of litigation about that. If Mr. Woods wanted to challenge that, that comes to this court, because that is not what is keeping him. And now that is before. I think the cases from the Fourth Circuit, Wida, Curbo, Carrington make that very clear. I agree with your honor that this court has not said that, I think primarily because most of these cases go to the circuits where those hospitals are located and we don't have one in this district. Let me ask a question a little bit differently because I might not have been clear. Do we have to decide that as a question of first impression? No. So tell me how we not answer this admittedly or conceitedly undetermined yet question in this court. Because the case is moot, your honors respectfully cannot order his release. He is confined solely based on the 4246 certificate. We can't provide any any of the relief that he sought. So that's what you're saying. That is correct, your honor. I think ultimately what you would be doing is essentially giving an advisory opinion on something that would not result in his. What your friend says is it is capable of repetition. What's your response to that? That's how he gets around your response. I disagree for several reasons. But the most the most important one is, as I understand, the capable of repetition yet evading review safety valve, so to speak, is it's a pretty high bar. You can't just suggest that this is possible that this could happen in the future. You have to have some pretty concrete facts to show that this has been continuing to happen. And I hear my friend's argument. He said that the exception exists here because it does frequently happen. Well, so Mr. Woods record to the contrary, I think, belies that Mr. Woods is a man who I forget his age, but he's not a young man. He's I guess that's relative. But as as someone who is not so young himself, I guess I realize that the second I said, Mr. Woods, I recall, I think, is in his 50s or 60s. I will be very careful. And I say that only in the sense that he has tremendous life experience and his life experience thus far has not brought him into federal court in the Western District of New York, despite residing here for that entire period of time. So putting aside the history, the chain of events that would have to occur to land him back here, that he would be released, that he would return to this community, that he would again commit this crime, that it would result in a federal prosecution, that he would have then be back in these situations. If if if we were to disagree with you and vacate the order, what would the District of Massachusetts then have to do? So let me answer that in two parts. What would the District of Massachusetts have to do? I suggest nothing. It's up to the District of Massachusetts. I can't disagree that. Well, what would the what would let me ask you more precisely because you're right. What would the issues be remaining in front of the District of Massachusetts? So I think if your honor vacated the underlying decision, there's two parts. The first part is I'm sure the lawyers representing Mr. Woods in the Massachusetts proceeding would say, see, there was a problem with the underlying timeline. So the 4240 this timeliness issue. Right. So they would essentially, I think, argue. I want to make the arguments for them, but I think we know it would be to say he wasn't then in 4241 D custody because it expired. And there's three categories of people that can be committed or that are subject to 4246 proceedings. So he's not in that kind of bucket. Number two, there's three buckets. The first is someone who's serving a sentence that's going to expire. The second is someone who's in 4241 D custody. But here's the rub. He would then be in bucket three, which is somebody who is had the proceedings against them dismissed due to or on account of or related to a mental disease or defect. And as I was thinking about this exact point last night, there's a recent 11th Circuit case that has a really interesting discussion of just that point. Judge Jordan's concurrence in United States versus Al Hindi. It's a December 23rd, 2024, 11th Circuit decision, which is 124 fed forth 869. Talks about exactly that point in a set in. Oh, by the way, that's a case to where is in almost the same procedural posture. The 11th Circuit says this is moot. Go to the civil commitment court. But Judge Jordan's concurrence, I think, is really interesting because what he essentially says is if we were to hold what the defendant in that case wants, which is what Mr. Woods in this case wants, is that he wasn't in bucket to custody. Well, it seems to me that he's then automatically in bucket three custody. So they either amend the certificate or refile the certificate. And we basically have a pyrrhic victory and we're back in the same position that we were. I think that's exactly the case. So I mean, so does that address what might be the awkward statutory handoff between the criminal and the civil? I mean, they're where does the government think the authority is for detaining him after four months? In this case, yes, the merits of this case. Sure. Let me please. I'm happy to talk about that. So in this case here, the statute, let me just step back for one half second, if I can, to wind up to it. Because my friend's argument kind of relies on the fact that once the initial 120-day period ends on May 15th or May 16th, that essentially we fall off the cliff and everything ends. Well, no, I mean, the reason I ask is one could imagine a panel very, very uncomfortable about no timeline, right? Like no end to making a determination as to whether or not it was restorable and the like. And so we're trying to figure out, I think, the outer bounds. I mean, he says it's an absolute. You're saying you're about to tell me it's a little more squishy than that, which might be right. But I'm interested in figuring out, like, are there any outer limits? Yes. If I can walk you through that, Judge Pettis. The answer, the first answer is reasonableness, right? Jackson v. Indiana, I think, teaches us that. And that is what sections 4241, 4246, and 4247 were built off of in response to the Supreme Court's decision. We see in some of the cases where there have been extraordinary or long delays in the certification kind of lead up, so to speak, like WADA, where the Fourth Circuit there dismissed a petition because it had taken six months and basically nothing happened. So what happens after that 120 days ends? The statute tells us in the first part, which is under D2A and B. D2A, the first part is you can get this. And D2A is what MAGA-SUBA is all about. You can get an extension if you're, and I'm paraphrasing, but if you're still trying to restore him and the court makes a finding to say there's a substantial probability. The alternative to that is if it's not going to go in that direction, then we're into B, which is an additional reasonable period of time until the pending charges against him are disposed of according to law. And I think that's- It's been dismissed though, right? So that doesn't answer all of that for him. I'm sorry, I missed the first part of your question. Because criminal proceedings have been dismissed. That's correct. So how does that fit into B? Right, so I think this is why WADA and the other cases say that the crucial period of time for the court to look at is in between the unrestorability determination and when that certificate is filed. So kind of when the switch flips from saying we're not able to restore anymore, we have to either outright dismiss or move to civil commitment or something outside of restorability because that's not going to happen. So the cases say that the government has to move reasonably to do that. And I would submit that that's exactly what happened here. We lay out the timeline in our briefs. Here it's really short. If you judge it, you know, from Magistrate Judge Romer's decision in order of August 2nd, which I'd suggest that maybe the right date to look at is Judge Villardo's affirmance of that. I mean, Judge Villardo's affirmance by the time he affirms, which happened very quickly, he's already been certified. So that process took place very quickly. And that's WADA, the Fourth Circuit case says that at 305, that that period of time, the continued hospitalization of a person for whom the court doesn't believe restoration is possible can only last for that additional period of time until the pending charges against him are disposed of according to law. So it has to be that very short window of time. And if I may, just button up one other piece, if the presider's permission. Of course. Okay. So earlier I asked a question and you answered it about how we didn't need to speak on an issue of first impression as to where they need to go because you would argue we don't have jurisdictions. So when would this court ever rule on it? When when somebody was detained here for the hospital, like hospitalized here? Like, when would be a cause? What would be the scenario? What would be the fact pattern in which we would actually have to rule? And it would seem to me that it might be when somebody was actually hospitalized here. Is that right? That would certainly be one. You'll forgive me for trying to tease one out in my head as well. But that's that's that's the example that you can. That's the easiest one. I just want to put a caveat on that, right? Because there are federal facilities within the Second Circuit, but there is not one that does restorations right now. So you it might be that we don't have cause. It might not be what I was trying to tease out in my head, Your Honor. Well, it's just odd to me that we would not answer an open question that was presented with us. And usually we don't because we don't have to. But you're suggesting that we might never have to, which I also find odd. So two answers to that. Well, it's not that I mean, I understand Your Honor saying that this court would never have to. But it's not that any federal court would. I totally get it. I totally get that other circumstance. I'll leave off that point. That's that's I think the primary. The second point, is there maybe a way that it could happen? And I'm sorry, I'll say the third time. This is what I'm trying to tease out in my head, and I can't develop it fast enough. But maybe, you know, if the district court had immediately stayed the order or immediately after it was the state was denied. And that person came to this court then to say, you know, stay now before 42-46 is commenced. Before that evaluation takes place, there wouldn't be a 42-46 certification in all likelihood because that evaluation hadn't taken place. So that could be a way that it gets here as well. If I could just say one. I'm sorry, Your Honor. Do you agree that U.S. v. Baker, the Sixth Circuit case, requires a certificate in order to, before a court can conduct a hearing? I'm just reading it and I'm not seeing it, but. I will. I don't remember seeing that in Baker either. But in fairness, I have never seen. I won't. I don't think I've seen every civil commitment case. But I have never seen a civil commitment case that did not start with the filing of a certificate.  So whether that is actually required, I'm not certain. I think it's right. By failing to adhere to the procedures outlined in section 42-46, the district court lacks statutory authority to commit Baker and deprive him of his liberty without due process. It would be kind of strange, I think, to start a 42-46 proceeding without a certification. Both because, A, that's what the statute says you should do. I mean, I realize it doesn't say must, but it says shall certify. So you agree that that's a reasonable reading of the statute? I do. Could I just, I know I'm out of time, but if I could say one thing about the certify then evaluate discussion that your honors are having with my friend before. And the questions were geared at avoiding absurd results, which I agree with completely, and we argued that in our brief. But I would like to add kind of one just thought to it. And this is kind of along the lines of Judge Perez's question about, you know, essentially, and I'm paraphrasing, but do you really want just kind of the government to certify without action? And I think that's exactly the point here. To say if there was an error, which we think there is none, the error was, under my friend's view, that Mr. Woods got more process than he was entitled to. Right? I think this court should, I mean, the BOP did the exact right thing. They said we're going to go to the court, we're going to get an order to keep him in for 45 days to make sure that we can do this evaluation. Because I think they take the word certify seriously. It would be a little different, I think. Excuse me. Let me interrupt for just a second if I may. I'm sorry, Judge Carney. No, please. I'm sorry to interrupt, but, I mean, there are other evaluations. I mean, the competency evaluations and the restorability evaluations going on, it would be hard for them to steer clear entirely of dangerousness. So there's probably some record available before a certification. It's not just that there's, you know, we don't know you, but we're going to certify you dangerous. Right? I agree. And the cases kind of say both. I agree with you just as a common sense matter. There has to be some overlap between the evaluation that's going on and then some of that information necessarily has to carry into the dangerousness evaluation. But the circuits that have addressed this, too, also say they are looking at two totally different things. And I think that's right. Because in 4241D1, the goal is to restore the person if possible. And we want the BOP focused on that. And then, essentially, if it fails, then we look to 4246 certification. I was also a little confused that the court seemed not to have ruled on your 3142 motion, saying there's a presumption of favored detention, because that was also an opportunity to address dangerousness at an early stage. Could you comment about how that happened? Sure, Judge. And whether in the ordinary course that might be an alternative that would provide the kind of process that we've been discussing. Yeah, and again, I think part of this is the same point in terms of what were people focused on. And I don't say that in a way of an excuse, but an explanation, and I think a correct one. I mean, the transcript from the initial appearance where it first comes up, which is A20 to 32, the attorney who was representing two other attorneys from the Federal Defender's Office who were representing Mr. Woods at that time, essentially say, our client won't talk to us. He wants to represent himself. And the discussion is, look, we can't even get through an initial appearance. We're not getting through a detention hearing now. And the magistrate judge says words to the effect of, well, I'll tell you exactly what he says. He says, after the forensic exam, at that point, Ms. Benz, the attorney, you'll get back to us on whether or not you want to continue with the initial appearance and with the detention hearing. And I think that makes perfect sense, that a lawyer would want to be able to communicate effectively with their client before exercising their one and only shot to a detention hearing. That was discussed several times later. It came up in the MAGA-SUBA context. I think I said on the record at least two or three times, we're ready to have a hearing right now. And, of course, that didn't happen, and understandably so, because the defendant wasn't able to be communicated with. Thank you very much. Thank you, Your Honor. I appreciate it. So I'm afraid I owe the court two apologies. First, I wrongly used the word stall regarding the Massachusetts case, as my friend pointed out. That's entirely my mistake. My other mistake, Judge Loyer, is it is, in fact, not the Baker case. But I would point you to page 20 of my reply brief. There is a large paragraph at the beginning of that page citing cases from the Fifth Circuit, Bonin, which does hold that you can't have a dangerousness hearing in the absence of a certificate. LaPie from the Seventh Circuit holding that the withdrawal of a dangerousness certificate deprives the district court of authority to conduct a dangerousness hearing. And then there's Weber from the Ninth Circuit, which says that the director of the facility has to make the initial determination regarding dangerousness. And Baker, which says that the district court generally lacked authority to commit the defendant where it didn't heed the procedures in Forty-Two Places. Right. So just in brief rebuttal to a few of my friends. May I ask you a question? Certainly. Sorry to belabor this point, but now on the mootness issue, what exactly are you looking for? What is the relief that you seek? What is the precise relief that you seek? We want the district court's affirmance of the magistrate judge's order vacated, and we want our client released. That is the precise relief we seek. But it's an order. You want it vacated, and then what will that do? The vacature? Because I'm very focused on judgments and orders. That is the only effect of our mandates is on a judgment or an order. What is the order here? The order, I suppose, is that the— No, no, no. Not exposed. What is the order? The order is that the director of FMC Devins shall release, or the AG or whoever it's directed to, shall release Mr. Wards forthwith and unconditionally. So we in New York are directing a federal official in Massachusetts to release your client? That is correct. How can we do that? That's what we're asking for. How can we do that? Well, as I said, I mean, it wouldn't be any different than really ordering somebody released on a bail appeal who happens to be in a different district. For example, we have clients all the time who are in the Northeast Ohio Correctional Facility pending trial, which is in the Sixth Circuit, obviously, and certainly the district court's here, and I'm sure on occasion this court has ordered people released from that facility, notwithstanding the fact that it's outside the territorial jurisdiction of this court. Turning to a few of the other things my friend said, there are a number of cases citing in the brief. He focuses—Mr. Eldridge focuses on the final order before the certification. There are a number of cases, particularly from the Tenth and the Fifth Circuit cited in my briefs, that hold that what matters is sort of not necessarily the proximate cause of the 4246A detention, but the series of steps leading up to it. And here that would be the excess of 4241D1 time, and also, and this is completely untouched by 4241, the ordering of the 4247B commitment in the absence of a certificate, and that would be the last order before the certification took place. And, of course, it's our contention that that was ultra-virus. I'm sorry. Can I go back to this order?  So he is not detained pursuant to this order, correct? That is correct. Yeah, he's correct. Right now he is under the auspices of 4246A. In answer to my question, these are very basic questions because I'm a little confused, so forgive me. In answer to my question, you said you want him released. But he is not detained pursuant to the order that's in front of us that you've challenged? The argument, I suppose, is that that order is, that that order— No, not you suppose. When you say suppose, what is the argument? It's just a verbal tick. I'm sorry.  It's, the argument is that, the argument is that that order, pursuant to which he is being held, and the court is quite right, is illegitimate as a result of the— He is not detained pursuant to the order. So whether the order was legitimate or illegitimate doesn't seem to matter to me, but clarify this for me. I'm sorry, I didn't mean to interrupt. I meant the 4246A order is legitimate as a result of the sequence of events that facilitated its entering, which here was what we contend is a 47— But you were seeking his release, right? Correct. No matter what we do with respect, he's not detained pursuant to the challenged order, so no matter what we do with respect to the challenged order, we'll not change the circumstance, we'll not change the result as to him, as to detention or release. Do I have that right or do I have that wrong? I guess I'm not sure, because I think it depends ultimately on Judge Talwani to some degree. Right, but if we were to say he is not detained pursuant to challenged order, which we all agree is true, and if we were to make that the order, then that wouldn't change what your client is experiencing in Massachusetts, right? So the question is, is it a waste of time? Is it advisory? Is it influential to the others? I mean, what would it do? I do think it's influential to the others. I'm not here to be influential. So what is it that we could do that would change what you are asking for? Well, I would point out that I can see there's some uncertainty about what would happen with release, but I would also point out that we're asking for two forms of relief here also, which is the vacating of the order, which loops us back into the mootness argument, because even if my client were, for example, to file a HABE in the First Circuit, obviously if that HABE were granted, that would be a determination of First Circuit law as opposed to Second Circuit law. I would not solve for my client this problem of capable of repetition yet evading reviews, and so he would not get complete relief, really, even from that kind of procedure. And do you have a substantive challenge to the dangerousness determination that has been made? No. No. If I could just make a couple – One minute. One minute. I would point the court to the Berry case in the Fifth Circuit, in which the court says – it's cited in my brief – in which the court says we have never found moot a case where a 4241D1 order has been entered, so long as the person has not ultimately been adjudicated dangerous under 4246. And secondly, my friend's reading of the statute – I think it's important to point out here that part of my friend's argument relies on the idea that my client somehow transported – excuse me – transported into 4241D2B custody, but that ignores the entire contingent clause of 4241D2B, which is that that provision only kicks in if there is the prospect that the person can be restored, which, of course, is not the case here. And he also ignores the final clause of the statute, which is each of these things that happen – the four-month evaluation period, the restoration period, and or the dismissal of charges – is governed by a final sentence, which says, whichever is earlier. So in this case, the earliest event here would be the lapsing of the 4241D1 commitment. And so my friend's argument would make absolutely no difference to this case, even if it were correct. Thank you so much. Thank you. That was a very helpful argument. Thank you.